1  Tami Kameda Sims (SBN 245628)
   tami.sims@katten.com
2  **KATTEN MUCHIN ROSENMAN LLP**
   2029 Century Park East, Suite 2600
3  Los Angeles, CA  90067-3012
   Telephone: 310.788.4400
4  Facsimile: 310.788.4471

5  Christopher B. Ferenc (*pro hac vice* forthcoming)
   KATTEN MUCHIN ROSENMAN LLP
6  2900 K Street, N.W., Suite 200
7  Washington, DC 20007
   Telephone: (202) 625-3500
8  Facsimile: (202) 298-7570
   christopher.ferenc@katten.com
9
10 Matthew H. Hartzler (*pro hac vice* forthcoming)
   KATTEN MUCHIN ROSENMAN LLP
11 525 W. Monroe Street, Suite 1600
   Chicago, IL 60661
12 Telephone: (312) 912-5200
   Facsimile: (312) 902-1061
13 matthew.hartzler@katten.com

14 Attorneys for Movant Bel Power Solutions Inc.

15

16                    **UNITED STATES DISTRICT COURT**

17                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18                            **SAN JOSE DIVISON**

| | |
|---|---|
| 19  Bel Power Solutions Inc., | Case No. 5:23-mc-80024 |
| 20                Movant, | **BEL POWER SOLUTIONS INC.'S MOTION TO COMPEL COMPLIANCE WITH THIRD-PARTY SUBPOENA** |
| 21       v. | |
| 22 | |
| 23  NVIDIA Corporation, | |
| 24                Third Party. | |
| 25 | |

26

27

28

## I. INTRODUCTION

Movant Bel Power Solutions Inc. ("Bel Power") respectfully seeks an order compelling Third Party NVIDIA Corporation ("NVIDIA") to produce documents, information, and deposition testimony in response to a subpoena directed to NVIDIA in an action pending in the Western District of Texas styled as *Bel Power Solutions Inc. v. Monolithic Power Systems*, *Inc.*, No. 6:21-cv-655-ADA (the "Texas Litigation").

The Texas Litigation is a patent infringement action concerning six U.S. patents owned by Bel Power (the "Patents-in-Suit"). The inventions claimed in the Patents-in-Suit are directed toward improving distributed power control in integrated circuits. The Patents-in-Suit are universally respected, and semiconductor manufacturers have recognized the strength of the Patents-in-Suit and taken licenses.

At the heart of the Texas Litigation are Bel Power's allegations that Defendant Monolithic Power Systems, Inc. ("MPS") induces and/or contributes to the direct infringement by its customers. MPS designs, manufactures, and supplies power module products, and works with manufacturers, known as "end customers," in the United States to incorporate MPS power module products into end-customer products that are sold, offered for sale, and/or imported into the United States. NVIDIA is one such end customer of MPS and sells products in the United States that incorporate MPS power module products. Information related to NVIDIA's purchase of MPS power module products, their incorporation into NVIDIA products, and importation of those NVIDIA products into the United States is central to Bel Power's indirect infringement claims.

Bel Power has sought as much of this information as possible from MPS, but MPS has refused to provide relevant information regarding certain end customers such as NVIDIA. After seeking court intervention, the court in the Texas Litigation instructed Bel Power to obtain such information from third parties. Accordingly, on November 16, 2022, Bel Power served NVIDIA with a subpoena seeking specific documents and deposition testimony relating to such information (the "Subpoena"). (Ex. A.) Counsel for Bel Power and Nvidia met and conferred about the subpoena on December 2, 2022. Since then, Bel Power, in order to accommodate NVIDIA, has considerably narrowed its requests and has attempted to work with NVIDIA in an effort to obtain its compliance

with the Subpoena. Such attempts have been to no avail. To date, NVIDIA has promised but produced no documents and has failed to make any corporate witness available for deposition testimony. NVIDIA's discovery failures have therefore required the filing of this Motion to Compel its compliance with the third-party subpoena.

## II. FACTUAL BACKGROUND

### A. The Texas Litigation

Bel Power's Complaint alleges that MPS has committed acts of direct, induced, and contributory infringement against the six Patents-in-Suit: U.S. Patent Nos. 6,936,999, 6,949,916, 7,000,125, 7,049,798, 7,080,265, and 7,456,617. (Ex. B, Compl.)

The Patents-in-Suit are directed to improving distributed power control in integrated circuits. (*Id*. at ¶ 31.) The substantial technological improvements embodied by the claims of the Patents-in-Suit have been well recognized and subject to substantial industry praise and extensive licensing. (*Id*. at ¶¶ 32, 33.) Certain claims of the Patents-in-Suit have been successfully litigated such that they were found infringed and valid by a jury, with that holding affirmed by the United States Court of Appeals for the Federal Circuit. (*Id*. at ¶ 34; *Power-One Inc. v. Artesyn Technologies, Inc*., 599 F.3d 1343 (Fed. Cir. 2010).)

MPS designs, tests, and manufactures power module products that infringe the claims of the Patents-in-Suit (collectively, the "Infringing Products"). (Ex. B, Compl. at ¶¶ 10, 11.) The Infringing Products are used in integrated circuit boards—the electronics that power video game consoles, laptops, computer graphics cards, networking equipment, and more. (*Id*. at ¶¶ 12, 30.)

In order to sell its products, MPS works with end customers, like NVIDIA, to design one or more of the Infringing Products into the end customer's devices. MPS hires U.S. engineers and uses its U.S.-based sales office to specifically target U.S.-based end customers, including NVIDIA. Moreover, MPS seeks "design wins"—decisions made by end customers to incorporate MPS products into end customer devices—in order to drive revenue through sales of the incorporated MPS products to end customers. (*See, e.g.*, Ex. C, MPS 2021 10-K SEC Report, at 32.)

Since May 2022, Bel Power has sought the identity of the MPS end customers who are located in the United States and from whom MPS has sought and obtained "design wins" for the

1  Infringing Products. MPS has refused to provide this discovery under the guise that it lacks
2  knowledge of whether a particular end customer does, in fact, incorporate an MPS product, despite
3  MPS having achieved a "design win" with respect to that end customer. As a result, the court in the
4  Texas Litigation has instructed Bel Power to seek this information from the third party end
5  customers that incorporate the infringing MPS products into devices bound for the United States.
6  (Ex. D, Texas Litigation Dkt. No. 63, at 5 ("[An MPS] third-party customer may import the product
7  into the United States. This act of importation may give rise to damages. Plaintiff may seek
8  discovery from these third parties who import these products.").)
9       In October 2022, MPS was compelled to produce internal e-mail correspondence that
10 revealed the identities of certain MPS end customers located in the United States for which a
11 "design win" was sought and obtained. (Ex. E, Texas Litigation Dkt. No. 68, at 5–6.) Based on
12 those emails, Bel Power identified eighteen third parties that may have information relevant to
13 MPS's efforts to encourage the sale, offer for sale, and/or importation in the United States of end
14 customer products containing the Infringing Products. Bel Power served those entities with Rule
15 45 subpoenas in mid-November 2022. NVIDIA is one of the third party end customers that MPS
16 identified through discovery in the Texas Litigation.
17     **B.**    **NVIDIA and MPS**
18      NVIDIA is a multinational technology company with headquarters located in this District
19 at 2788 San Tomas Expressway Santa Clara, CA. NVIDIA sells numerous products and services in
20 the computing industry, among others.
21      Importantly, NVIDIA is an end customer of MPS. As such, NVIDIA incorporates MPS
22 Infringing Products into NVIDIA products that are sold, offered for sale, and/or imported into the
23 United States. For example, MPS marketing materials tout the incorporation of several MPS
24 products into NVIDIA's RTX 3080 Power System used for graphics processing in computers. (*See*
25 https://www.monolithicpower.com/en/support/videos/tear-down-of-nvidia-gtx-3080-power-
26 system.html, last accessed January 22, 2023.) While sales of the RTX 3080 are unknown to Bel
27 Power due to the lack of NVIDIA's response to the Subpoena, the RTX 3080 sold out within
28

seconds on the day of its release in the United States. (*See*, *e.g.*, https://www.tomshardware.com/news/rtx-3080-sold-out, last accessed January 22, 2023.)

### C. Bel Power's Diligent Efforts to Obtain Relevant Discovery From NVIDIA

On November 22, 2022, based on internal e-mail correspondence produced by MPS in October and November, and in view of the Texas Litigation court's directive to obtain further discovery relevant to MPS's infringement from its end customers, Bel Power served the Subpoena on NVIDIA seeking the production of documents and deposition testimony. (Ex. A.) The Subpoena is narrowly tailored and Bel Power primarily seeks information related to specific MPS products that Bel Power contends are MPS Infringing Products. (Ex. A at 11–14.)

On November 29, 2022, NVIDIA served boilerplate objections to the Subpoena, indicating that it "meet and confer with Bel Power in order to narrow the scope" of the Subpoena requests and topics. (Ex. F.) In addition to numerous emails, and in order to minimize the burden on NVIDIA, counsel for Bel Power met and conferred with NVIDIA on December 2, 2022, with Bel Power explaining the categories of documents it sought and why these were relevant to the Texas Litigation. Bel Power further identified specific Infringing Products that met the definition of "MPS Accused Products" in the Subpoena in an attempt to be cooperative and in order to obtain compliance with the Subpoena and minimize burden on the parties. (Ex. G, *inter alia*, Email A. Pettes to R. Chang, dated Dec. 2, 2022, attempting to facilitate discovery.)

NVIDIA's objections and subsequent correspondence focused on relevance and attempted to ward off responsive discovery by splitting hairs regarding its products numbers. Bel Power provided to NVIDIA its Final Infringement Contentions and 132 claim charts in one of several further attempts to resolve the dispute and obtain compliance. (Ex. H.) Bel Power identified a video teardown of NVIDIA's RTX 3080 product that includes MPS Infringing Products (*see* https://www.monolithicpower.com/en/support/videos/tear-down-of-nvidia-gtx-3080-power-system.html), and further narrowed the information sought. Specifically, on January 9, 2023, as "a final effort to resolve this subpoena without seeking relief from the Court," Bel Power narrowed the scope of information and documentation it was seeking to the following:

     (i)    the quantity of [MPS Infringing Products] [from a narrowed list] that Nvidia purchased since 2015, including the price paid for each product purchased;

     (ii)   an identification of the NVIDIA products that incorporate the [MPS Infringing Products] purchased by NVIDIA since 2015; and

     (iii)  the number of NVIDIA products identified in (ii) that were sold and/or imported into the United States since 2015.

The specific MPS Infringing Products at issue in the subpoena and presented to NVIDIA in its Bel Power's Final Infringement Contentions included the following:

> mEZDPD1620A\AS, mEZDPD4506A\AS, MP2884A, MP2886A, MP2888A, MP2935, MP2953B, MP2965, MP2981, MP5417, MP5413, MP5416, MP5470, MP8796B, MP8843, MP8845, MP8854, MP8861, MP8869, MPM3695, MPM54304, MPM82504, MPQ8645P, MPQ8875A, MPQ8880, MPQ8883, and MPQ8886.

(Ex. A; Ex. H.) Bel Power also agreed to limit its request for a deposition not to exceed three hours. (Ex. G.)

Despite exhausting efforts to narrow the scope of information sought and, in turn, lessen any burden on NVIDIA, NVIDIA has produced nothing. On January 20, 2023, NVIDIA, without committing to even produce responsive information (much less schedule a deposition) regarding the products that Bel Power has specifically identified (which is narrower than what is sought by the Subpoena), stalled again on responding as required by the Subpoena. On January 26 and 27, NVIDIA promised to provide information on specific MPS parts numbers no later than 6:00 pm PT on January 27, 2023. (Ex. G.) NVIDIA failed to do so.

Particularly in light of fact discovery in the Texas Litigation closing on January 27, 2023, NVIDIA's non-responsive stalling and failure to produce any documents has necessitated this motion.

### III. JURISDICTION

Bel Power brings this motion pursuant to the Federal Rule of Civil Procedure 45. Under Fed. R. Civ. P. 45(d)(2)(B), if an objection is made by the third-party recipient of a subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Bel Power set the place of compliance for the Subpoena as

1  San Jose, California—in this District. (Ex. A.) NVIDIA objected to the Subpoena in its November
2  29, 2022 responses (Ex. F.) Because NVIDIA has refused to produce any of the requested
3  information, an order compelling the same is necessary, and this Court has jurisdiction to do so
4  under Fed. R. Civ. P. 45(d)(2)(B).

5  **IV.   DIVISIONAL ASSIGNMENT**

6       Pursuant L.R. 3-2(c), this case should be assigned to the Division serving the county in
7  which the action arises. Here, the action arises at the Subpoena's location of compliance because
8  that is where the omissions giving rise to this dispute occurred. The location of compliance of the
9  Subpoena is San Jose, California, which is in Santa Clara County. (Ex. A.) Under L.R. 3-2(e), civil
10 actions that arise in Santa Clara County shall be assigned to the San Jose Division.

11 **V.   ARGUMENT**

12      Federal Rule of Civil Procedure 45 governs the process of seeking discovery from third
13 parties by subpoena. Fed. R. Civ. P. 45. The Rule permits a party so seek from a third party
14 production of documents. Fed. R. Civ. P. 45(a)(1)(A). "[T]he scope of discovery through a
15 subpoena is the same as that applicable to Rule 34 and the other discovery rules." Fed. R. Civ. P.
16 45, advisory committee notes (1970). Pursuant to Fed. R. Civ. P. 34—the rule governing the
17 production of documents between parties—the proper scope is that specified in Fed. R. Civ. P. 26.
18 Fed. R. Civ. P. 26 generally permits discovery regarding "any nonprivileged matter that is relevant
19 to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

20     **A.   The Information Sought from NVIDIA is Relevant to Indirect Infringement
21         Committed by MPS**

22      The patent laws in this country make clear that "[w]hoever actively induces infringement of
23 a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To prove its induced infringement
24 claims, Bel Power must present evidence showing that (1) a third party directly infringed its patents,
25 (2) MPS induced those infringing acts, and (3) MPS knew the acts it induced would constitute
26 infringement. *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 843 F.3d
27 1315, 1332 (Fed. Cir. 2016). The information Bel Power seeks from NVIDIA is unequivocally
28 relevant to each of these issues because it allows Bel Power to establish underlying direct

1  infringement resulting from the sale, offer for sale, and/or importation of NVIDIA products
2  containing MPS Infringing Products in the United States. The volumes, prices, and other
3  information sought is further relevant to Bel Power's claim for damages against MPS in connection
4  with its efforts to induce infringement.
5        NVIDIA does not dispute that it purchases MPS Infringing Products. Nor does NVIDIA
6  challenge that MPS Infringing Products have been incorporated into NVIDIA products that were
7  sold, offered for sale, and/or imported into the United States. The NVIDIA RTX 3080 Power
8  System is a prime example of a NVIDIA product that incorporates MPS Infringing Products and is
9  imported, sold, and offered for sale in the United States. NVIDIA also does not dispute that, if an
10 NVIDIA product that incorporates an MPS Infringing Product is imported, sold, or offered for sale
11 in the United States, such importation, sale, or offer for sale would be an act of direct infringement.
12 As such, NVIDIA cannot credibly dispute that the information sought by Bel Power—the MPS
13 Infringing Products purchased by NVIDIA, the NVIDIA products that incorporate those MPS
14 Infringing Products, and the quantity of NVIDIA products imported, sold, or offered for sale in the
15 US—is directly relevant to Bel Power's inducement claims.

16     **B.**    **NVIDIA's Objections to the Subpoena are Non-Substantive Boilerplate**

17       Notwithstanding the relevance to Bel Power's inducement claims, and NVIDIA's failure to
18 dispute the same, NVIDIA's objections rely instead on simple, cut-and-paste, non-substantive
19 boilerplate. (*See generally* Ex. F.) As just one boilerplate objection, NVIDIA alleges *ad nauseum*
20 that the requests and deposition topics are "vague, ambiguous, unduly burdensome, and irrelevant."
21 As a preliminary matter, Bel Power's Final Infringement Contentions were served in July 2022, at
22 the beginning of fact discovery—before MPS produced any non-public discovery that could allow
23 Bel Power to identify NVIDIA (or any other end customer of MPS) as having information relevant
24 to MPS's efforts to induce infringement of the Patents-in-Suit. To argue against "relevance," based
25 on what Bel Power possibly could have known, without the benefit of necessary and pertinent
26 discovery from MPS, is contrary to the core purposes of discovery under the Federal Rules. In short,
27 objecting on the grounds of relevance is—like the other boilerplate objections are—nonsensical.
28

### C. NVIDIA is the Appropriate Source of the Information Bel Power Seeks

Evidence of the underlying direct infringement to support Bel Power's inducement claims, and the magnitude of activity to support a damages calculation, is appropriate to seek from NVIDIA. While Bel Power diligently sought as much of the pertinent information from MPS in the Texas Litigation—including identification of end customers, MPS products that have "design wins" with such customers, and quantities of MPS products sold for incorporation into end customer products—the court in that action has instructed Bel Power to seek such information directly from third parties, including NVIDIA. But, even if the Texas Litigation court had compelled MPS to produce such information, at least some of the requested information is likely only available from third parties. For example, NVIDIA is in the best position to identify which of its products incorporate MPS Infringing Products, the number of MPS Infringing Products purchased (which may have been purchased indirectly from MPS distributors), and the volume of importation and sales of such products into and in the United States.

By narrowing the scope of the requested information, and seeking it from NVIDIA only after instruction from the court in the Texas Litigation, Bel Power has done everything possible to minimize any potential burden on NVIDIA to produce responsive information. The information sought is not only relevant, it is also material to Bel Power's infringement claims. As important, NVIDIA does not dispute that it possesses such information. Accordingly, NVIDIA is an appropriate entity from which Bel Power is seeking discoverable information.

## VI. CONCLUSION

For the foregoing reasons, Bel Power respectfully requests that this Court enter an order compelling NVIDIA to produce the documents requested by Bel Power in the Subpoena and make a corporate witness available for deposition testimony.

Dated: January 27, 2023                                    KATTEN MUCHIN ROSENMAN LLP


By: */s/ Tami Kameda Sims*
       Tami Kameda Sims
Attorneys for Movant,
Bel Power Solutions Inc.